## CHAMBERS *v.* BECKWITH.

1. Licenses—Blue Sky Law—Liability for Sale of Unapproved Stock.

    President of corporation selling stock therein which was not approved under 3 Comp. Laws 1915, § 11945 *et seq.,* is not excused from liability because, before the company was organized, subscription for the stock was signed by purchaser, since the taking of subscriptions for such stock was an offense under section 11958.

2. Appeal and Error—Admission of Evidence Harmless in View of Charge.

    In action to recover money paid for stock sold in violation of blue sky law, admission of testimony that defendant agreed to make good any defaults of the company was not reversible

error, where trial judge charged that any such promise was void under statute of frauds, and submitted the case solely as one involving violation of said statute.

3. Limitation of Actions—Affirmative Defense—Must be Pleaded to be Available.

That action to recover money paid for stock sold in violation of blue sky law is barred by statute of limitations (section 20, Act No. 220, Pub. Acts 1923), is affirmative defense and is not available unless pleaded (Circuit Court Rule No. 23).

4. Licenses—Blue Sky Law—Right to Recover Under Former Statute Not Lost by Repeal.

Right to recover money paid for stock sold in violation of blue sky law while Act No. 46, Pub. Acts 1915, was in force was not lost by the repeal of said act by Act No. 220, Pub. Acts 1923, without therein saving rights of action of this character.

5. Same—Sales of Unapproved Stock Voidable—All Actively Engaged in Such Sales Liable for Money Paid.

Sales of stock in violation of blue sky law are voidable, and all actively engaged in making such sales are liable, upon rescission thereof, in action for money had and received for the money paid for such stock.

6. Same—President of Corporation Liable.

Corporation president who recommended purchase of its stock, took the checks for the purchase thereof, and, as president of the company, signed the stock certificates sent to purchaser, was liable for amount paid, where said stock had not been approved and its sale was in violation of blue sky law.

Error to Genesee; Parker (James S.), J. Submitted April 2, 1929. (Docket No. 17, Calendar No. 32,810.) Decided June 3, 1929.

Assumpsit by Ethel G. Chambers against Jesse H. Beckwith for money paid for stock sold in violation of the "blue sky law." Judgment for plaintiff. Defendant brings error. Affirmed.

*Paul V. Gadola,* for plaintiff.

*Chandler & Friegel* and *Roy E. Brownell,* for defendant.

FELLOWS, J.   The parties to this case were friends of long standing.   While there is conflict in the testimony, there is evidence tending to show that while plaintiff was visiting at defendant's home in Flint, she asked him about his investments, and was informed by him that he was investing in General Motors and a company conducting a bakery at Flint known as the Central States Baking Company; that she told him she had money to invest, and he recommended an investment in the baking company; that she there talked with no one else about the company; that she went home and talked with her daughter about it, and her daughter came to Flint and talked further with defendant, who also to her recommended the company as a prosperous one; that the daughter gave to defendant checks for the purchase price of the stock; and that later certificates of stock, which were signed by defendant as president of the company, were forwarded to her.   The transaction occurred while Act No. 46, Pub. Acts 1915 (3 Comp. Laws 1915, § 11945 *et seq.*) was in force.   The stock had not been approved under this act.   Some time after the issuance of the stock, it was tendered back, and, on refusal to accept a rescission of the transaction, this action was brought.   To review a judgment for plaintiff entered on the verdict of the jury, defendant prosecutes this writ of error.

1.   It is claimed by defendant that plaintiff signed a paper, the purport of which was a subscription to the stock of the company not then organized.   This is denied by plaintiff.   Defendant is unable to produce such paper, but does produce a paper which he claims was the form used for taking subscriptions.

But, under the act of 1915, the taking of subscrip, tions was an offense. 3 Comp. Laws 1915, § 11958; *People* v. *Hartman,* 228 Mich. 171, 176. If defendant actively participated in the transaction, as we shall presently see, he is not excused from liability because, before the company was organized, a subscription for the stock was signed by plaintiff.

2. There was some testimony in the case tending to show that defendant agreed to make good any defaults of the company. This testimony originally was excluded, but was finally allowed after defendant's counsel had indulged in cross-examination on the subject. But the trial judge sustained defendant's contention that any such promise was void under the statute of frauds, and so definitely charged the jury on several occasions. He also instructed the jury that there was no evidence of fraud, and no recovery could be had on that ground, and submitted the case solely as one involving the violation of the blue sky law. The errors assigned on this branch of the case are overruled.

3. It is here urged that the action is barred by the limitation of the statute found in section 20, Act No. 220, Pub. Acts 1923. We need not consider whether this statute of limitation in the act of 1923 is applicable to causes of action arising under the former act, or by the application of common-law rules, as the statute of limitations is not pleaded as a defense in this case. It is an affirmative defense, and is not available unless pleaded. Circuit Court Rule No. 23; *Chippewa Supervisors* v. *Bennett,* 185 Mich. 544, 563; *Shank* v. *Woodworth,* 111 Mich. 642.

4. It is urged that, by the repeal of the act of 1915 by the act of 1923, without therein saving rights of action of this character, such right is lost. This contention is overruled by *Coe* v. *Portland Farmers' Elevator Co.,* 236 Mich. 34.

5. The main question in the case grows out of the refusal of the trial judge to direct a verdict for the defendant, and to his charge in which he instructed the jury that if defendant participated in the sale of the stock, aided and abetted in its sale, he was liable. Error is also assigned on the refusal to grant defendant's requests, which stated a contrary rule, or which materially modified the one given. Since *Edward* v. *Ioor,* 205 Mich. 617 (15 A. L. R. 256), this court has consistently held that sales of stock in violation of the blue sky law are voidable, and all actively engaged in making such sales are liable, upon rescission thereof, in an action for money had and received for the money paid for such stock.

In *Thompson* v. *Cain,* 226 Mich. 609, after quoting from the *Edward Case,* it was said:

"In that case the interest of the defendants varied. But they were all engaged in a common enterprise and an unlawful one, and the common enterprise was the sale of unapproved stock. So here, if the defendant aided and assisted Raymond and Thompson in the sale of this stock to plaintiff and her husband, they were engaged in a common enterprise and an unlawful one. The common enterprise, let us emphasize, was the sale of the stock, and how the proceeds were to be divided, if they were to be divided at all, was not controlling, nor were their pre-arrangements or interest important."

And in *Lewis* v. *Bricker,* 235 Mich. 656, it was said by Mr. Justice McDONALD, speaking for the court:

"In order to recover against the defendant it was not necessary to show that he made representations as to the stock, or that what he did was the procuring cause of the sale. It is sufficient if it appears that he actively assisted in the unlawful common enterprise, which was the sale of the stock."

Under the plaintiff's testimony, defendant, and defendant alone, handled the transaction for the company. Under her testimony, plaintiff talked with no one else and saw no one else in the transaction. If her testimony was true, and the jury believed it, defendant recommended the purchase of the stock, took the checks for the purchase price, and, as president of the company, signed the stock certificates sent to her. If he did these things, he was liable in this action.

The judgment will stand affirmed.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.