THOMAS A. S. YOUNG AND RICHARD C. S. YEE *v.* DANIEL KWOCK, FRANCIS W. C. HU AND JANE KWOCK HU.

No. 4946.

August 31, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

The Ala Moana Stardust Lanes, Inc., a Hawaii corporation (hereinafter "Stardust Lanes") negotiated at least 26 unregistered promissory notes to 37 persons during the period from April 12, 1962 through March 20, 1963. Each of the plaintiffs purchased one of the above mentioned notes for $5,000, and when neither principal nor interest was paid on either note, both elected to rescind the sale pursuant to HRS § 485-20(a) alleging the sales were unlawful under Hawaii's Blue Sky Law.[1] The rescission action was commenced against several officers of Stardust Lanes resulting in the joint and several liability of Mr. Kwock, the president, and Mrs. Hu, the treasurer. Mrs. Hu appealed from that judgment.

---

[1] HRS § 485-8 provides that:

"It shall be unlawful for any person to sell or offer to sell any security except of a class exempt under section 485-4 or unless sold or offered in any transaction exempt under section 485-6 in the State unless the security has been registered * * * as hereinafter provided."

## I.

Mrs. Hu raises three basic defenses. First she argues that § 485-6(9) exempts the transaction. This section provides an exemption for:

"Any transaction pursuant to an offer directed by the offeror to not more than twenty-five persons * * * during any period of twelve consecutive months * * *."

Mrs. Hu contends that the last clause, "any period of twelve consecutive months," really means "during any fiscal year." The application of the defendant's interpretation would, in this case, spread the transaction into two periods neither of which contained twenty-six offers. Mrs. Hu offers no other relevant reasons for such an unusual interpretation, except that it provides her with an exemption and, hence, a defense to liability. The section states plainly and unambiguously that *any* period of twelve months may be used and we can not construe this to mean otherwise. *State* v. *Tamanaha,* 46 Haw. 345, 379 P.2d 592 (1963) ; *Pub. Ut. Comm.* v. *Narimatsu,* 41 Haw. 398 (1956).

## II.

Next, Mrs. Hu argues that even if the transaction was not exempt she should not be held jointly and severally liable in a rescission action for the unlawful sales.

The pertinent part of HRS § 485-20 reads:

"Every sale made in violation of this chapter shall be voidable at the election of the purchaser; and the person making the sale and every director, officer, or agent of or for the seller, if the director, officer, or agent *has personally participated or aided in any way in making the sale,* shall be jointly and severally liable to the purchaser * * *." (Emphasis added.)

It's readily apparent that Stardust Lanes, as the person selling, is *automatically* liable in a rescission action for its

sale of unregistered notes.[2] Equally apparent is the possible extension of liability beyond the seller to a director, officer or other agent who participates or aids in the disposition. If the seller is an individual it may be that he, alone, disposed of the securities. However, as in the present case, if the seller is a corporation, by necessity, others must be liable under this section, for a corporation, bereft of both body and mind, can only operate through agents, and it is the agents who knowingly aid the illegal transaction that are jointly and severally liable.

In the present case one of the officers is Mrs. Hu, the treasurer, and she along with other officers, directors and agents are charged with knowing the Blue Sky registration requirements and the duty is upon each of them not to assist unlawful sales. *Lolkus* v. *Vander Wilt,* 258 Iowa 1074, 141 N.W.2d 600 (1966). One becomes personally liable only when he has participated in the transaction. However, Mrs. Hu contends that while she was an officer at the time the transaction occurred she did not aid or participate in the sale. She argues that "aids" means *inducing* the purchaser to buy and that the facts indicate that she took no part in the "selling" effort. Though some jurisdictions have followed such reasoning,[3] no such restricted interpretation on the liability section seems warranted. The plaintiffs did not allege fraud in the inducement,[4] but rather the sale of unregistered securities. Therefore, not merely the salesmen who induced the purchase but *all* officers, directors and agents who *in any way* contributed to the disposition of the securities are liable.

---

[2] HRS § 485-1(9) specifically includes a corporation within its broad definition of "person," and "sale" under § 485-1(10)(A) broadly covers every contract or disposition of a "security" for value.

[3] *E.g.,* Nichols v. Yandre, 151 Fla. 87, 95, 9 So. 2d 157, 160 (1942).

[4] Fraudulent practices in connection with offer, purchases or sales are unlawful under HRS § 485-25.

The trial court found that Mrs. Hu signed the notes in her capacity as treasurer and this act, alone, significantly indicates aid in the disposition. In *Smith* v. *Crawford,* 228 Ky. 420, 15 S.W.2d 249 (1929), the court faced a similar situation covered by the identical language and held that:

> "[The defendant] was an officer * * * of the corporation and even if he had not participated in negotiating the particular sale [to plaintiff], his official relation to the corporation and *his signing the stock certificate* rendered him liable if the stock was sold in violation of any provision of the law." *Id.* at 423. (Emphasis added.) *See also, Chambers* v. *Beckwith,* 247 Mich. 255, 225 N.W. 605 (1929); *McWhirter* v. *Holmes,* 49 Ga. App. 536, 176 S.E. 153 (1934).

### III.

Additionally, Mrs. Hu raises the affirmative defense of in pari delicto. This defense generally requires that the plaintiff be equally culpable in the transaction producing the defendant's liability. Because it is the civil liability provisions and not the criminal sections of the Blue Sky law that generally promote compliance[5] we agree that the defense of in pari delicto should be carefully limited to those situations where the plaintiff is equally culpable. *E.g., Miller* v. *California Roofing Co.,* 55 Cal. App. 2d 136, 130 P.2d 740 (1942).

Applying this stringent standard to the present case, each of the plaintiffs must be culpable of aiding in the disposition of at least some of the 26 notes negotiated by

---

[5] L. Loss & E. Cowett, Blue Sky Law, at 130 (1958); Note 16 Wayne L. Rev. 294 (1969) stresses the importance of private actions for the successful enforcement of Blue Sky laws, federal securities laws and antitrust laws and the proper role of in pari delicto. The author also discusses the difference between in pari delicto and the "unclean hands" defense. The latter needing only unconscionable conduct rather than equal culpability.

Stardust Lanes *and* have been an officer, director, or sales agent of Stardust Lanes. The trial court found that Yee and Young did not "aid or participate in any way" with the disposition of the notes and, therefore, were not in pari delicto with Mrs. Hu. We disagree with this conclusion. Among other things, the court found that both plaintiffs talked to other persons and explained that the notes were on sale and could be purchased from Mr. Kwock. The law for Young and Yee is the same as for Mrs. Hu. Any form of knowledgeable assistance in the disposition of unregistered securities is aid within the meaning of the act. Therefore, both Young and Yee did aid in the disposition of the securities.

Unanswered is whether Young and Yee were agents, for to be culpable and, hence, in pari delicto those who aid or participate must be an officer, director or agent of the seller.

Reversed and remanded for determination of plaintiff's agency status.

*J. Harold Hughes* (*Hughes, Steiner & Rohlfing* of counsel) for defendant-appellant.

*Herbert Y. C. Choy* (*Olen F. Leonard, Jr.,* on the brief, *Fong, Miho, Choy & Robinson* of counsel) for plaintiffs-appellees.