294 So.2d 403 (1974)
Lisa RUDEN, Appellant,
v.
Donald MEDALIE, Appellee.
No. 73-923.
District Court of Appeal of Florida, Third District.
April 30, 1974.
Rehearing Denied May 28, 1974.
*404 Fink & Syna, Miami, Joe N. Unger, Miami Beach, for appellant.
Carey, Dwyer, Austin, Cole & Selwood, and Steven R. Berger, Miami, James O'Flarity, Ft. Lauderdale, for appellee.
Before CARROLL, HENDRY and HAVERFIELD, JJ.
HENDRY, Judge.
This is an appeal by the plaintiff in the trial court from an adverse directed verdict, which followed a jury verdict in her favor, and entry of final judgment thereon in accordance with Florida RCP 1.480, 30 F.S.A.
Plaintiff, Mrs. Ruden, alleged in her complaint that defendant, as an officer, director or agent in a corporation, First Eastern Realty Corp., had personally participated or aided in the making of a sale of certain debentures which were illegal under the provisions of Fla. Stat. Ch. 517, the Florida "Blue Sky Laws."
The salient facts produced at trial revealed that plaintiff met one, Jerome Tremont, in June, 1970 at a bridge party. *405 Thereafter, the couple developed a social relationship, and at one point, Tremont proposed marriage to Mrs. Ruden.
Tremont represented himself as an "efficiency expert" in the investment market. Mrs. Ruden testified that Tremont recommended that she invest in discount bonds, which she did, and she made a profit from this investment. Later, Tremont discussed the possibility of an investment in the First Eastern Realty Corp. in which Tremont was the president and director.
During the course of their relationship, Tremont informed Mrs. Ruden that the defendant, an attorney, was representing him. Defendant had been associated with a firm in Broward County in which Mrs. Ruden's deceased husband was the senior partner. She testified that after the defendant left her husband's law firm, she would see the defendant from time to time on social occasions. Plaintiff stated that she considered the defendant "a person of highest integrity" and that she "highly trusted" his judgment.
The evidence demonstrated that in June, 1969, defendant as Tremont's attorney filed the necessary documents with the Florida Secretary of State's office in order to form the first Eastern Realty Corp. It is defendant's position that he was initially listed as a secretary and director of the corporation only to fulfill the required number of positions for the company. Defendant testified that after formation of First Eastern the only function he performed in connection with the corporation was the retention of approximately 50 debentures. He stated that as the corporate secretary he signed certain of these debentures as an attesting witness to Tremont's signature. Some of the debentures the defendant signed in blank; others contained the names of specific purchasers already typed on the debentures.
In addition, defendant testified that he cautioned Tremont with respect to the registration requirements of the Blue Sky Laws in this state, but was unaware that the debentures were not registered. Defendant stated that Tremont informed him that he had another attorney in Boston who could handle his affairs.
Mrs. Ruden testified that she purchased twelve of these debentures on October 20, 1970. The debentures each had a face amount of $5,000, bearing ten per cent annual interest; nine of the twelve contained the defendant's attesting signature. The plaintiff stated that in exchange for the debentures, she gave Tremont $60,000 worth of blue chip securities. Thereafter, Tremont absconded and to date has not been located.
Plaintiff received some $6,000 in interest payments on the debentures up until approximately six weeks before trial. When she learned that the debentures were unregistered and that Tremont would not likely return to Florida, Mrs. Ruden in accordance with the terms of Fla. Stat. § 517.21, F.S.A. tendered the debentures to the defendant, seeking rescission of her capital investment. This demand was refused, and plaintiff commenced this action.
The testimony revealed that nine of the twelve debentures which the defendant signed and which plaintiff purchased were signed in blank. Defendant maintained that he never discussed First Eastern with Mrs. Ruden and never told her of his connection with the corporation. Mrs. Ruden testified that when Tremont showed her the debentures, she was swayed by defendant's attesting signature appearing thereon. She admitted that she was an inexperienced investor, that while Tremont had described the nature of First Eastern's business in a general way, she did not investigate the books and records of the corporation nor the value of the debentures before investing.
At the close of the plaintiff's case, the trial judge stated that the plaintiff had failed to make a case; however, he submitted the issues to the jury so that the cause would not have to be retried in the event *406 the court was mistaken. The jury returned a verdict of $22,500 in favor of the plaintiff. The court then set aside the verdict, pursuant to a timely motion for directed verdict which had been reserved, and entered final judgment against the plaintiff.
Plaintiff contends that the court erred because the evidence supported the jury's determination that the defendant's signature on the debentures constituted a participation or aid in the sale of illegal securities and induced the plaintiff to purchase the bonds. We are constrained to disagree.
The language contained in Section 517.21(1) provides that any sale in violation of the provisions of Chapter 517 is voidable at the purchaser's election against any director, officer or agent of or for the seller, if the director, officer or agent has "personally participated or aided in any way in making the sale."
The quoted language has been construed to mean "some activity" by the one sought to be charged, "in inducing the purchaser to invest." Nichols v. Yandre, Fla. 1942, 151 Fla. 87, 9 So.2d 157, 144 A.L.R. 1351; see also, Sorenson v. Elrod, 286 F.2d 72 (5th Cir.1960); Scott v. Novick, Fla.App. 1965, 172 So.2d 516; Baraban v. Manatee National Bank of Bradenton, Fla.App. 1968, 212 So.2d 341.
Appellant has cited authority from other jurisdictions which does not require fraud in the inducement under statutes reading the same as Section 517.21(1). Young v. Kwock, 474 P.2d 285 (Haw. 1970); Annot., 44 A.L.R.3d 588. Nevertheless, it is clear in this state that an officer, director or agent of a seller in order to be held personally liable for the sale of illegal securities must engage in some act or acts which induces the purchaser to invest.
The facts and circumstances of the cause sub judice do not indicate that the defendant's mere act of signing nine debentures in blank as an attesting witness and corporate secretary was a legally sufficient inducement to the plaintiff to hold defendant personally liable. Defendant never knew nor discussed plaintiff's interest in investing in Eastern Realty. Nor does the record reflect any consultation between Mrs. Ruden and the defendant pertaining to her investment in the corporation. The plaintiff only once made a cursory inquiry of the defendant about Tremont, at which time the defendant stated that the latter seemed knowledgeable of the market, and in plaintiff's words, a "great guy."
In our view, Mrs. Ruden's claim that she was persuaded to purchase the debentures by the appearance of defendant's signature on nine of them, should be weighed against her own corresponding duty to exercise precaution in safeguarding her own interest. See 14 Fla.Jur. Fraud and Deceit § 37.
Plaintiff also argues that even if the jury verdict is not reinstated, this case should be reversed and remanded for a new trial because the court erred in denying plaintiff leave to amend her complaint by adding a count alleging common law negligence. Plaintiff sought leave to amend one week before trial of this case, contending that a deposition of the defendant revealed negligence in his duties as an officer or director of Eastern Realty.
While the policy in Florida is to liberally allow amendments to pleadings when justice so requires [Turner v. Trade-Mor, Inc., Fla.App. 1972, 252 So.2d 383; Romish v. Albo, Fla.App., 291 So.2d 24, opinion filed February 26, 1974], a trial judge in the exercise of sound discretion may deny an amendment where the same materially varies from the relief initially sought, or where a case has progressed to a point that the liberality ordinarily to be indulged has diminished. Dunn v. Campbell, Fla.App. 1964, 166 So.2d 217; United States v. State, Fla.App. 1965, 179 So.2d 890; *407 Triax, Inc. v. City of Treasure Island, Fla.App. 1968, 208 So.2d 669.
Sub judice, we do not think the trial court has abused its discretion by denying plaintiff's motion to amend.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed is affirmed.
Affirmed.