462 So.2d 512 (1985)
Algie F. VAUGHN, As Personal Representative of the Estate of Mary Emma Vaughn and Algie F. Vaughn, Individually, Appellant,
v.
EDWARD M. CHADBOURNE, INC., Appellee.
No. AX-403.
District Court of Appeal of Florida, First District.
January 3, 1985.
*513 Norton Bond, Pensacola, for appellant.
Donald H. Partington and Millard L. Fretland, Clark, Partington, Hart, Hart & Johnson, Pensacola, for appellee.
ERVIN, Chief Judge.
In this action for personal injuries and wrongful death, appellant, Algie Vaughn, seeks review of an order granting summary judgment in favor of a roadway contractor and manufacturer of paving materials, defendant below. We reverse.
In January of 1981, appellant and his wife, Mary Vaughn, traveled north by car on Walton County Road 1087, and while Mary Vaughn drove the car within legal speeds and approached a curve, the car's left wheels encountered a two-inch drop-off in the center of the two-lane road. Mary Vaughn lost control and the car skidded across the road twice before rolling over. The accident caused Mary Vaughn's death and severely injured Algie Vaughn. The drop-off from the northbound lane to the southbound lane initiated the accident.
Appellee paves and grades roadways and parking lots, and manufactures all of its paving materials. With a sand-asphalt mix manufactured in its own plant, appellee paved Road 1087 in October and November of 1978, under a contract with the Florida Department of Transportation (DOT). During the paving process, DOT tested the sand-asphalt mix at appellee's plant and at the paving site. After the mix and paving work met all state tests and specifications, the state returned the road to Walton County for maintenance on April 24, 1979. After that date, appellee was not responsible for inspection or maintenance of Road 1087 and did no further work or repairs.
In late 1980, a Walton County commissioner, on official business, inspected the section of Road 1087 where the Vaughns' accident occurred. The commissioner noticed a wearing away of Road 1087's southbound lane and told the county's engineering consultant. Walton County, however, took no steps to repair the drop-off before the Vaughns' accident. Other uncontroverted evidence reveals that the eroding or wearing away of the 1978 resurfacing *514 caused the drop-off in Road 1087. Furthermore, if Walton County had reasonably inspected the road within a week of the accident, the drop-off would have been apparent.
Appellant's complaint contains three theories of liability: breach of warranty, negligence and strict liability. While the trial court gave no reason for its summary judgment, the two issues argued below and on appeal are: (1) Whether appellee can be held strictly liable under Section 402A of the Restatement (Second) of Torts; and (2) whether the chain of proximate causation was broken when the defect became patent and was in fact observed by a Walton County commissioner. Since resolution of the proximate cause issue in appellee's favor covers all three theories of liability, it was probably the basis of the summary judgment. We address the first issue also, however, because of its importance to appellant's strict liability theory.
Appellant relies in part on Hardin v. Montgomery Elevator Co., 435 So.2d 331 (Fla. 1st DCA 1983), for the proposition that a product manufactured and then incorporated into an improvement to real property falls under section 402A. The defendant in Hardin manufactured an elevator which was installed in a college building. After plaintiff was injured in the elevator, she sued under a strict liability theory. The specific holding in Hardin is that "[w]hether the product is placed on the market by the manufacturer who knows it is not to be used `without inspection for defects' is not a defense to a claim of strict products liability under section 402A, as adopted by the Florida Supreme Court." 435 So.2d at 337 (emphasis in original). While not specifically addressing the issue of whether improvements to real property fall under section 402A, the court did find "particularly compelling" that the theory of strict liability had previously been applied to the manufacturers of elevators in several cases. Id. at 336.
Appellant also relies on Halpryn v. Highland Insurance Co., 426 So.2d 1050 (Fla. 3d DCA 1983). The plaintiff in Halpryn, after falling on a wet, freshly painted concrete driveway, sued the paint manufacturer on strict liability grounds. The appellate court affirmed a directed verdict for the manufacturer, because there was no evidence that a "defect" in the paint caused the injury. As in Hardin, while concentrating on another issue, the Halpryn court apparently assumed that paint, as an improvement to real property, falls under section 402A's coverage. Appellant also argues that Gory Associated Industries, Inc. v. Jupiter Roofing and Sheet Metal, Inc., 358 So.2d 93 (Fla. 4th DCA 1978), supports reversal in the instant case. While a roofing tile manufacturer was held liable for defective tiles in Gory, the opinion addresses only the question of damages and does not state which theory of liability the trial court relied upon. The instant appellee argues that Halpryn and Gory are distinguishable because they concern products "merely incorporated" into a structural improvement, instead of comprising the entire structural improvement itself. Appellee's distinction is weak since neither section 402A, nor the Florida courts have made that distinction, and appellee's asphalt-sand mix did not comprise the entire structural improvement to Road 1087.
Appellee also counters with Neumann v. Davis Water and Waste, Inc., 433 So.2d 559 (Fla. 2d DCA 1983), and Alvarez v. DeAguirre, 395 So.2d 213 (Fla. 3d DCA 1981), on the section 402A coverage issue. In Neumann, plaintiff made a strict liability claim against the installer or assembler of a sewage treatment tank. The Second District, in affirming dismissal of plaintiff's claim, declined "to extend the strict liability principle of West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976), to structural improvements to real estate." 433 So.2d at 561. The Neumann court cites Alvarez, where the defendant was a general contractor who built a house in which a faulty electrical box started a fire. The Third DCA held that the Alvarez defendant could not be held liable under strict liability theory. 395 So.2d at 216. As in Neumann, the defendant in Alvarez was not the defective product's manufacturer and, *515 thus, both cases are distinguishable from the instant case.
While no Florida case has explicitly discussed whether a product first manufactured and then incorporated into an improvement to real property falls under section 402A coverage, Hardin, Halpryn and Gory imply that the manufacturer of such a product can be held strictly liable. Appellee's argument that the sand-asphalt mix was not put into the "stream of commerce" may be valid in other states, but not in Florida. Hartman v. Opelika Machine and Welding Co., 414 So.2d 1105, 1106-1107 (Fla. 1st DCA 1982).
Even if appellee can be held strictly liable, appellant must still prove proximate causation to recover under any of the three alleged theories of liability. E.g., West, 336 So.2d at 87. The underlying question is how to characterize appellee. If appellee was simply a contractor or builder, then Slavin v. Kay, 108 So.2d 462 (Fla. 1959), and its progeny absolve appellee of liability because the uncontroverted evidence reflects that the drop-off became patent and observable by Walton County before the accident. See Echols v. Hammet Co., Inc., 423 So.2d 923 (Fla. 4th DCA 1982). Since, however, appellee manufactured the sand-asphalt mix in its own plant, it should be characterized as a contractor and a manufacturer. As a manufacturer, appellee can be distinguished from the defendants in Slavin and Echols.
Moreover, the fact that the defect became patent and observable after a transfer of maintenance authority to Walton County does not serve as an absolute bar to liability. Auburn Machine Works Co. v. Jones, 366 So.2d 1167 (Fla. 1979); Clement v. Rousselle Corp., 372 So.2d 1156 (Fla. 1st DCA 1979).
Reversed and remanded for further consistent proceedings.
MILLS and ZEHMER, JJ., concur.